UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22385-CIV-HOEVELER

FARID MARQUEZ, an individual,
LUIS MADERAL, an individual,

    Plaintiffs,

v.

SUNTRUST BANK, a Georgia banking
corporation, and SCOTT STORCH, an individual

    Defendants.

_____/

## ORDER GRANTING DEFENDANT SUNTRUST'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the Motion for Summary Judgment filed by Suntrust Bank as to Plaintiffs' claim that SunTrust fraudulently induced Plaintiffs to enter into a loan with Scott Storch.[1]  The Court has determined that summary judgment is appropriate as there is no dispute as to any material facts.

## BACKGROUND

The Plaintiffs, Farid Marquez and Luis Maderal, bring this action against SunTrust based on alleged misrepresentations made by Alex Hernandez, a SunTrust employee at the time , to Carlos Abril, a person allegedly working on Plaintiffs' behalf. Plaintiffs claim that they loaned $170,000 to Scott Storch in reliance upon Hernandez's

_____

[1]This case already has been dismissed, without prejudice, as to Defendant Storch as a result of Plaintiffs' failure to serve Storch.

guarantee to Abril that SunTrust would make a subsequent loan to Storch in order to refinance Storch's existing mortgage with SunTrust (in the amount of approximately $7.7 million) secured by his residence on Palm Avenue in Miami Beach. According to Plaintiffs, Abril told them that Hernandez told Abril that the $170,000 given to Storch by Plaintiffs would be repaid by the proceeds of the refinancing of Storch's mortgages which was to occur in early December 2007, and that the loan Plaintiffs were providing to Storch would be a short term loan, a "slam dunk." (Depo. Farid Marquez, p. 26). Unfortunately for Plaintiffs, Storch never made a payment on their loan, and his property ultimately was the subject of a successful foreclosure action brought by SunTrust, thereby extinguishing Plaintiffs' interest in the property. (Complaint, ¶ 21).

## FACTS

Plaintiffs claim that SunTrust "and its officers, and Alex Hernandez, in particular, acting on behalf of SunTrust Bank and Scott Storch", asked Plaintiffs to loan money to Storch. (Complaint, ¶ 13). It is undisputed that Plaintiffs, a psychologist and a physician, never met Storch nor Hernandez nor anyone else connected to Defendant SunTrust[2]; instead, Plaintiffs' sole source of information about this loan was Carlos Abril, a real estate agent and mortgage broker (Depo. Abril, p. 4)

---

[2]Although the Complaint states that SunTrust "repeatedly contacted Plaintiffs in an attempt to secure a loan" for Storch (Complaint, ¶15), Plaintiffs admit in their testimony that they never personally met anyone from SunTrust and communications relating to the loan were between Hernandez (allegedly representing both SunTrust and Storch) and Abril, and then between Abril and the Plaintiffs. (Marquez, p. 27, lines 7-25; Maderal, p.27, lines 22-24). Marquez did not even know who Hernandez was and neither Plaintiff ever witnessed Abril speaking with Hernandez. (Marquez, p. 27, lines 7-19; Maderal, p. 28, lines 4-6).

who has not been made a party to this lawsuit.  Abril has known Plaintiff Maderal since they met at Belen High School in the 1960s.  Abril reconnected with Maderal in approximately 2001 (Depo. Maderal, p. 6), and then several years later met Marquez as a result of Marquez sharing office space with Abril's brother. (Marquez, p. 7).

In 2007, Abril presented Plaintiffs with the idea of lending money to Storch. (It is unclear, but immaterial, who initiated these discussions.)  At some point prior to these discussions about Storch, Abril had presented at least two other lending deals to Plaintiffs, featuring short repayment schedules and interest rates of approx. 12-14 percent. (One of those earlier loans had been very successful, i.e., generated interest income for Plaintiffs, and the other had not been successful. (Abril, pp. 6, 58; Maderal, pp. 13, 16; Marquez, pp. 9,11, 12, 14).)  Abril ultimately succeeded in encouraging Plaintiffs to make the loan to Storch, and Abril was paid two percentage points of the total loan at its origination. (Abril, pp. 58-59).

Storch signed a Balloon Note on November 20, 2007, memorializing the terms of the loan made by Plaintiffs. (Complaint, ¶ 20, see Dkt. No. 1, p. 13).  According to the Note, repayment would be made by the maturity date of December 1, 2008; the annual interest rate was 14.99%, and Storch was to make monthly payments of $2,123.58. The Note was secured by a mortgage as to 70 Palm Ave., Miami Beach, FL; the mortgage was signed by Storch on the same date of the Note, and witnessed by Abril and Vicente Betancourt (reportedly Storch's business manager). The Borrower on both the Note and the Mortgage is Scott Storch, and the Lender is "Farid Marquez

& Luis Maderal"; Plaintiffs' signatures are not on either the Note or the Mortgage.[3]
The mortgage was not recorded by Abril until February 5, 2008, more than two months
after it was signed.

Both Plaintiffs have testified that their only information about the loan was
from Abril. (Marquez, p. 65, lines 6-7, Maderal, p. 28, lines 4-6). Marquez viewed Abril
as an advisor, and would "go along" with whatever he said. (Marquez, p. 56, lines 4-7).
Plaintiffs claim to have not even seen the documents (the Note and the Mortgage)
which were signed by Storch until the documents were shown to Plaintiffs during their
depositions related to this lawsuit. (Marquez, p. 39; Maderal, p. 42).[4] Maderal testified
that he "placed the whole thing in" Abril's hands (Maderal, p. 47), and that Abril "knew
a lot" about Storch (Maderal, p. 52, lines 12-19). Indeed, Abril was aware that Storch's
property had a "very large mortgage" on it (Abril, p. 16), and that Storch had
experienced prior problems obtaining credit. Abril initially introduced Storch to
Hernandez several years earlier for the purposes of obtaining that large mortgage - a
mortgage which Abril had attempted to secure on his own for Storch but been unable
to complete. When he introduced Storch to  Hernandez, Abril told Hernandez about
Storch's poor credit issues. (Abril, pp. 26, 28, lines 8 - 13). As a result of making this
introduction, Abril was aware of the mortgage SunTrust ultimately provided to Storch
(Abril, pp. 15, 24-27), and told Plaintiffs that there was a "tremendous amount of

---

[3]Neither Hernandez nor SunTrust is alleged to have prepared the Note and
Mortgage, nor has it been alleged that any employee of SunTrust signed the
documents.

[4]Maderal later clarified that he didn't *remember* seeing the document.
(Maderal, p. 44).

money on the mortgage" (Abril, p. 17).

It is undisputed that Plaintiffs were aware of SunTrust's superior lien on Storch's property ( Marquez, p. 45, lines 5-11; Abril, p. 16, lines 1-4; p. 17, lines 11-19), and the risk it posed to their loan (Abril, p. 32, lines 22-23). Maderal testified that "risk is always involved in a transaction like this, but I move towards the business due to that [sic] the positive expectations surpassed the negative ones." (Maderal, p. 36). Both Plaintiffs and Abril admit that they relied on Abril's recommendation of the Storch loan and, as a result, did not do any independent research into Storch before making the loan. Storch never made any payments to Plaintiffs pursuant to the Note. In July 2008, SunTrust filed a foreclosure action against Storch, Marquez, Maderal, and another lender, and in June 2009, judgment was entered declaring SunTrust's interest superior to the other lenders.

## ANALYSIS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. As described above, most of the facts in this case are undisputed. As to the few contested facts, the Court finds that those disputes are not as to material facts; Plaintiffs have failed to establish essential elements of their claim and, as such, summary judgment is appropriate.

Plaintiffs' claim for fraud in the inducement against SunTrust alleges that Hernandez (as an agent of SunTrust and Storch) induced Plaintiffs (represented by

Abril) to enter into a loan with Storch.  To prove fraud in the inducement under Florida

law a party must establish that there was:

> (1) a false statement regarding a material fact,
> (2) by someone who knew the statement was false,
> (3) with intent that the statement would induce another to rely on it, and
> (4) injury suffered in reliance on the representation.

Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010).  On the record before the Court, there

is simply no basis for a finding that a material fact was misrepresented and, as such,

Plaintiffs' claim must fail.

Taking all the evidence in the light most favorable to the non-moving party, it

is clear that this case has no triable issues of fact.  Even if the Court were to find that:

1) Abril was Plaintiffs' agent, 2) Hernandez - representing SunTrust and Storch - made

the statements which have been attributed to him[5], and 3) Plaintiffs - through Abril -

relied on the statements made by Hernandez, the Plaintiffs' claim still would not

succeed because they have not established a disputed material fact as to a critical issue:

that the alleged statements by Hernandez were misrepresentations. At most, Plaintiffs

have established that they - acting through their advisor Abril - relied on Hernandez's

prediction of future events as to this admittedly risky investment.[6]

---

[5] Hernandez denies or claims that he cannot recall having made the statements.  For purposes of deciding this summary judgment motion, the Court has resolved all disputed issues as to the existence of these statements in favor of Plaintiffs.

[6] Plaintiffs assert that Hernandez "personally guaranteed" that the refinancing of Storch's loan would occur.  In light of Abril's previous knowledge of Storch's financial situation, it seems odd that he would have relied on a bank employee's "personal guarantee" of action by the bank without obtaining something binding in writing.

Assuming that Hernandez made statements concerning the certainty with which Storch would receive a subsequent loan, such statements would, at most, constitute a promise or a prediction of future events. "[A] promise of future action or a prediction of future events cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made." Cavic v. Grand Bahama Development Company, Ltd., 701 F.2d 879, 883 (11th Cir.1983). Abril testified that he received from Hernandez a "commitment letter that had been given to Storch or that was already written, maybe not given to Storch yet, toward a mortgage that would put Storch - would have paid all the debts." (Abril, p. 17).[7]  Plaintiffs claim, essentially, that Hernandez knew that Storch was a credit risk, and therefore fraudulently induced Abril into thinking he was not when Hernandez produced the"commitment letter" to Abril. However, Plaintiffs have not demonstrated that there is a question of fact as to whether the statements allegedly made by Hernandez or the allegedly produced "commitment letter" were misrepresentations.[8]  The undisputed

———————————————

[7]Neither Plaintiffs nor Abril have produced a copy of such "commitment letter" and it seems odd that a document not yet disclosed to the bank's own customer, Storch, would have been shared with a third party, particularly in light of Defendant's argument - undisputed by Plaintiffs - that Florida law prohibited the bank from disclosing any information regarding Storch's financial status. See Defendant's Reply to Amended Response.

[8]This is unlike the situation in Wallis v. South Florida Savings Bank, 574 So. 2d 1108 (Fla. 2nd Dist. Ct. App. 1990). In Wallis, the state appellate court reversed a lower court's dismissal of a claim for intentional misrepresentation, and permitted further factual development in a case involving a bank which issued a commitment letter regarding a loan of $27,000,000 - in excess of the bank's legal lending limit - to a real estate developer. The developer, Rodney Propps, used the bank's commitment letter to encourage others to take on financial risks in that development. The state court noted that if that bank knew that Propps was using the commitment letter to induce others to invest, then the bank might be liable for

evidence proves otherwise, as SunTrust extended an unsecured loan to Storch in the amount of $125,589.60 on December 6, 2007, <u>after</u> the Plaintiffs made their loan to Storch. Dkt. No. 1-1, p. 34, ¶ 8. This loan by SunTrust suggests that SunTrust at that time still considered loans to Storch to be an acceptable risk, which contradicts Plaintiffs' assertion that a purported "commitment letter" from SunTrust a month earlier had to be false.

Plaintiffs also claim that Hernandez failed to disclose important information as to Storch; however, when an omission serves as the basis for a fraud claim there must be an underlying duty to disclose. <u>Florida v. Mark Marks. P.A.</u>, 698 So. 2d 533, 539 (Fla. 1997). Such a duty arises only when one party has information that the other party has a right to know because of a fiduciary or other relationship founded on trust or confidence between them. There is no evidence of any such relationship in this case between Plaintiffs and SunTrust. Abril admitted in his deposition that Hernandez probably did not even know the identity of the Plaintiffs while Abril was negotiating the loan. (Abril, p. 62).[9] Plaintiffs had no prior dealings with SunTrust or Hernandez, and there is no evidence of any oral or written communication between Plaintiffs and SunTrust or between SunTrust and Abril which would suggest that SunTrust intended for Abril or the Plaintiffs to rely on any statements made by SunTrust or its employee

---

some damages. There is no evidence, or allegation, that SunTrust's purported commitment to refinance Storch's mortgage was in violation of the bank's lending limit.

[9]There were no written documents as to Abril's claimed representation of Plaintiffs and, according to Marquez, Abril never told Marquez that Hernandez knew that Abril represented Marquez as to this loan. (Marquez, p. 57).

Hernandez. Moreover, Abril had told Hernandez of Storch's credit problems when he introduced them, and there is simply no basis for holding Hernandez (or SunTrust) responsible for telling Abril something that Abril already knew and previously had disclosed to Hernandez.

Plaintiffs also have failed to prove that any resulting injury suffered was a result of reliance on the representations made by Hernandez. Plaintiffs concede that they relied solely on Abril and, as a result, did not do any independent research into Storch or into the loan before making the loan. (Maderal, p. 24, lines 3-6). Plaintiffs had entered into prior loan agreements through Abril and there is no evidence that they were under duress or in some way coerced or unable to act freely in these circumstances. Abril boasted in his deposition that the Plaintiffs have "great trust in me" and "trusted in my judgment". (Abril, pp. 6-7). While Plaintiffs relied solely on Abril, the record reflects that Abril was not relying solely on Hernandez. Abril claimed that there were "many reasons to think that" the SunTrust refinancing loan would go through other than what Hernandez had said. (Abril, p. 34). Specifically, Abril apparently was impressed by Storch's manager's report that two SunTrust "figures [not including Hernandez] came and partied over the weekend with Scott Storch". (Abril, p. 36). According to Abril, Hernandez had told him not to record the mortgage (Abril, p. 17, lines 7-8) because the loan would be closing so promptly, and Abril then suggested to Plaintiffs that there was no need to record the mortgage. (Abril, p. 18, lines 16-18). Although Abril had told Plaintiffs that there was no need to record the mortgage, Abril

ultimately did record the mortgage - which again suggests that Abril was not relying on Hernandez's representations.

In summary, Plaintiffs have failed to present disputed issues of fact as to the nature of the statements by Hernandez, or as to the question of Plaintiffs' damages being a result of reliance on those statements, and are subject to summary judgment Moreover, the Court observes that Plaintiffs' claim suffers from another weakness.

Plaintiffs claim that Hernandez represented both SunTrust and Storch. Plaintiffs appear to claim that Hernandez, conspiring with and on behalf of Storch, should not have told Abril (Plaintiffs) that Storch would be making the payments as promptly as Hernandez claimed. However, Storch signed the Note which presumably had been approved by Abril as the Plaintiffs' agent, and the Note explicitly contradicts the terms that Plaintiffs now wish to impose. The Note included explicit payment terms which contradict Hernandez's reported oral statements (allegedly on Storch's behalf) that Plaintiffs' loan to Storch would be paid back within weeks. Oral statements contradicted by a subsequent written agreement between parties are not binding. If the language of the Note would bar any fraud claims against Storch due to a lack of reliance (on prior oral statements in the face of contradictory written terms), then it would also bar such claims against Hernandez if he was simply Storch's agent as Plaintiffs' claim. G Barrett LLC v. Ginn Co., 2011 U.S. Dist. LEXIS 148127 (M.D. Fl. Dec. 23, 2011).

## CONCLUSION

Plaintiffs have not presented a triable issue of fact as to the falsity of the alleged statements or a breached duty as to the alleged omissions of SunTrust, nor have

Plaintiffs offered any evidence that they were injured due to reliance on these misrepresentations or omissions. Taking all the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have not supported their claim for fraudulent inducement against SunTrust. It is, therefore,

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment is GRANTED. Done and ordered in chambers in Miami, Florida, this ___ day of April 2012.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:
        Manuel Vazquez
        James Randolph Liebler
        Andrew Kemp-Gerstel